UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LEIGH ANN HARVEY, Individually                                           PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:09CV-122-S

UNITED STATES OF AMERICA                                   DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, United States of America, to dismiss the Complaint (DN 32) pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject-matter jurisdiction over plaintiff's claims.

This matter arose from a thyroidectomy performed on plaintiff by Dr. Mark Mount, an employee of the United States at Ireland Army Community Hospital, where he left surgical clips in her neck and rendered her parathyroid glands dysfunctional. Complaint, ¶¶ 9, 10. Plaintiff filed suit under the Federal Torts Claim Act, 28 U.S.C. § 1346 ("FTCA"). Defendant now moves to dismiss this action, asserting it is barred by the FTCA statute of limitations because plaintiff failed to file her administrative claim within the two year period required by the statute. 28 U.S.C. § 2401(b).

When a motion to dismiss is made, the court must accept the well-pleaded facts of the complaint as true and construe the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, when a district court's subject matter jurisdiction is challenged, "it is empowered to review extra-complaint evidence and resolve factual disputes." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 n. 11 (6th Cir.

2010). As here, "[w]hen a defendant brings a factual attack on subject matter jurisdiction, no presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review." *Ogle v. Church of God*, 2005 WL 2840299, *3 (6th Cir. 2005).

Plaintiff underwent a thyroidectomy at Ireland Army Community Hospital in Fort Knox on March 30, 2000, which was performed by Dr. Mount. Complaint, ¶ 9. On March 26, 2003, plaintiff underwent a second surgery with a private physician to remove a thyroid goiter, and it was discovered that during her initial surgery Dr. Mount had left surgical clips in her neck and had rendered her parathyroid glands dysfunctional. Complaint, ¶ 10.

Defendant now moves this court to dismiss plaintiff's Complaint for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), asserting that plaintiff did not file her administrative claim within two years of the claim accruing, as required by 28 U.S.C. § 2401(b). It is well settled that the United States is immune from suit unless an express waiver to sovereign immunity is provided, and the terms of this consent to be sued defines the court's jurisdiction to hear the suit. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The FTCA provides such a waiver of sovereign immunity, but limits it:

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b). The general rule is that a cause of action accrues under 28 U.S.C. § 2401(b) when the tortious act is committed. *Hertz v. United* States, 560 F.3d 616, 618 (6th Cir. 2009); *Hicks v. Hines, Inc.*, 826 F.2d 1543 (6th Cir. 1987). However, in medical malpractice claims, the U.S.

Supreme Court established a modified discovery rule in *United States v. Kubrick*. 444 U.S. 111, 123, 100, S.Ct. 352, 360, 62 L.E.2d 259 (1979). The Court reasoned that in medical malpractice cases, plaintiffs may not possess sufficient knowledge at the moment of the alleged tortious act to realize they have a cause of action. *Id*. Therefore, the limitations period should not accrue until a plaintiff, "armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community." *Id.*; *Hertz*, 560 F.3d at 618. Although accrual of the period should not wait until the plaintiff becomes aware his injury was negligently inflicted, once a plaintiff is aware of both the fact of injury and its cause, the two year statutory limitations period should begin. *Id*. at 120, 123; *Chomic v. United States*, 377 F.3d 607, 610 (6th Cir. 2004).

Determining when a plaintiff has sufficient knowledge of an injury and its cause to trigger the statutory period is "necessarily fact-intensive." *Hertz*, 560 F.3d at 619. The Sixth Circuit has noted that

> [i]n some cases, particularly medical-malpractice cases in which the plaintiff has little reason to suspect anything other than natural causes for his injury, a plaintiff might need to know, or have reason to know, of doctor-caused harm (though not necessarily of *negligently* doctor-caused harm) in order for his claim to accrue.

*Id*. (emphasis in original) (citing *Diaz v. United States*, 165 F.3d 1337, 1341 (11th Cir. 1999) (plaintiff's knowledge of spouse's suicide, "without any indication of medical treatment beforehand," did not trigger accrual of medical malpractice claim)). Further, the Supreme Court noted in *Kubrick* that "the nature of the tort itself and the character of the injury will frequently prevent knowledge of what is wrong, so that the plaintiff is forced to rely upon what he is told by the physician or surgeon." *Kubrick*, 444 U.S. at 120 n.7 (quoting *Restatement (Second) of Torts* § 899, Comment, *e*, pp. 444-45 (1979)).

Defendant argues that under the *Kubrick* standard, plaintiff knew of her injury almost immediately after the surgery in March 2000 when she suffered low calcium levels. Defendant asserts that because plaintiff should have known from these low calcium levels that she had suffered an injury during the surgery and her administrative claim was not filed until December of 2003, her claim is now barred. Plaintiff claims that she was repeatedly assured by Dr. Mount and other physicians that she could have temporary calcium deficiency as a normal consequence of the surgery due to "shock" to her parathyroids. Leigh Ann Harvey Depo., at 123 (Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Exhibit A); *see also* Dr. Mark Mount Depo., at 74 (Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Exhibit B) (Dr. Mount confirming that he advised plaintiff her low calcium levels were only temporary). Dr. Mount informed plaintiff that parathyroids sometimes go into shock from surgery, but that he all of patients had parathyroid functioning return. Harvey Depo., at 123-24. Plaintiff further states that Dr. Mount informed her that it was not a big deal and different people take different amounts of time for the functioning to return to normal. *Id*. at 132, 136.

Approximately one month after the surgery, Dr. Mount referred plaintiff to a private endocrinologist. Defendant asserts that at this time, plaintiff should have realized this was a permanent condition and that Dr. Mount had caused damage during the surgery. Plaintiff argues that Dr. Mount merely referred her to an endocrinologist to manage her levels and that she was again assured by Dr. Mount and the endocrinologist that her low calcium levels were of no concern and only a temporary side effect of the surgery. *Id*. at 142. Plaintiff also became pregnant and was informed by her obstetrician, Dr. Ulbrich that her low calcium issues could be attributed to her pregnancy. *Id*. at 58; *see also* Dr. Peter Ulbrich Depo., at 32 (Plaintiff's Response in Opposition to

Defendant's Motion to Dismiss, Exhibit C) (confirming that he would have informed plaintiff of the possibility that her "low calcium levels were related to pregnancy or breast feeding").

In May of 2001, plaintiff suffered physical symptoms from her low calcium levels, which required hospital care. Harvey Depo., at 149. Defendant asserts that at the latest, her claim should have accrued then because the medical records at the Martin Army Community Hospital included that her symptoms were due to calcium abnormalities secondary to damaged parathyroid glands. MACH Discharge Note ## ARMY _1218; ARMY_1848 (Defendant's Motion to Dismiss, Exhibit L). Defendant argues that because the information in the medical records necessarily came from plaintiff, this demonstrates plaintiff's belief that she had suffered an injury during surgery. Plaintiff asserts that when she visited the Army hospital for symptoms, she was again informed by the staff that it was normal for her calcium levels to be low due to her pregnancy and breast feeding, as she was at this time pregnant with a second child and breast feeding a newborn. Harvey Depo., at 149-51.

Plaintiff argues she continued to believe that her low calcium levels were a temporary condition from the shock to her parathyroids during surgery and also from her pregnancies and breast feeding. Plaintiff claims it was not until she had surgery in March 2003 that she understood for the first time that her parathyroids had been rendered permanently dysfunctional by Dr. Mount during her March 2000 surgery. Thus, plaintiff argues her administrative claim filed in December of 2003 was well within the two year statutory period under the FTCA.

Sixth Circuit precedent indicates that being aware of the extent or permanency of the condition is an important consideration in determining when the statutory period accrued under the

FTCA.[1] In *Coffie v. United States*, the Sixth Circuit decided a case involving a plaintiff who had dental surgery at the Department of Veterans Affairs Medical Center where her left temporal mandibular joint ("TMJ") was rebuilt with block silastic implants. 43 Fed. Appx. 808, 810, 2002 WL 1792188, *2 (6th Cir. 2002). Plaintiff later suffered pain and swelling and eventually had surgery on her right TMJ also. *Id*. Plaintiff sought the assistance of a private physician years later when the pain became so severe that she could not open her mouth. *Id*. at 810-11. The private physician performed surgery and discovered the implant had caused a degenerative joint disease, crumbling her jaw to pieces and informed plaintiff it should have been removed within six months of surgery. *Id*. at 811. The defendant argued the FTCA statute of limitations barred the claim because plaintiff should have been aware she was injured due to the pain or at the latest, by the second surgery on her right TMJ. *Id*. However, the Sixth Circuit held her claim was not time barred and stated,

> While there is no doubt that the pain and other symptoms [plaintiff] endured made her realize she was injured in some respect, she did not become cognizant of the full extent of her injury and its cause until [her private physician]...discovered the remnants of the silastic implants and her crumbled jaw.

*Id*. at 812.

---

[1] Defendant cites to other circuits for the proposition that being aware of the extent of the injury does not toll the statute of limitations. *See K.E.S. v. United States*, 38 F.3d 1027, 1029 (8th Cir. 1994); *Goodhand v. United States*, 40 F.3d 209, 209-13 (7th Cir. 1994); *Gustavson v. United States*, 655 F.2d 1034, 1036 (10th Cir. 1981). However, Sixth Circuit precedent indicates that being unaware of the extent of the injury can toll the statute of limitations and holds not understanding the permanency of a condition because of physician assurances can bar claim accrual. *See Coffie*, 43 Fed. Appx. at 812; *Robinson v. U.S. Dept. Of Army ex. rel.*, 48 Fed. Appx. 970, 2002 WL 31388734 (6th Cir. 2002) (holding that because the patient was informed immediately after that the surgery had caused a hole in her implant, statute of limitations not tolled, and discussing how the case differed from *Coffie*, where "the physician's assurances that the patient's post-operative symptoms were normal and that the surgery had been successful tolled the running of the statute").

In the case at hand, plaintiff was similarly unaware as to the extent and permanency of her injury from the initial thyroidectomy. While plaintiff was aware she would have temporary low calcium levels after the surgery, she was assured by Dr. Mount that her parathyroid functioning would return to normal. The Sixth Circuit stated in *McDonald v. United States* that "a patient may reasonably rely upon the assurances by physicians that complications are normal and do not indicate that an actual injury occurred." 843 F.2d 247 (6th Cir. 1988) (quoting *Rosales v. United States*, 824 F.2d 799, 804 (9th Cir. 1987)) (also citing *Wehrman v. United States*, 830 F.2d 1480, 1484-85 (8th Cir. 1987) (VA staff's alleged repeated advice is highly relevant and critical to the question of whether claimant should have suspected negligence); *Raddatz v. United States*, 750 F.2d 791, 796 (9th Cir. 1984) (doctor's assurances may be reasonably relied on by patient); *DuBose v. Kansas City Southern Railway*, 729 F.2d 1026 (5th Cir. 1984) (medical advice which suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury is relevant to determination of when plaintiff should be charged with actual notice of his injury)). It was not until the March 2003 surgery when it was discovered Dr. Mount left surgical clips in her neck and rendered her parathyroids dysfunctional, that plaintiff was aware she had suffered permanent injury to her parathyroids.

The Fourth Circuit examined a closely analogous case in *Otto v. National Institute of Health*. 815 F.2d 985 (4th Cir. 1987). Otto brought a medical malpractice action against the United States pursuant to the FTCA, alleging negligence in connection with a parathyroid surgery to remove "bad parathyroids" that were causing high levels of calcium. *Id*. at 986. The surgeon at the National Institute of Health ("NIH") informed her after surgery he had removed all of her "bad" and "good" parathyroids except for half of one "good" parathyroid, explaining that he wanted to see whether the

human body could function with only one half of a parathyroid gland. *Id*. Otto's surgeon referred her to a private physician to have her calcium levels monitored. *Id*. After she had complications from low parathyroid functioning, she was twice referred back to her NIH surgeon for attempted transplants of some of her frozen parathyroid tissue. *Id*. After the second attempted transplant Otto was told nothing more could be done to help her and that her condition was permanent. *Id*. Otto continued to suffer convulsions and cramps from low calcium levels and filed an FTCA claim approximately one year later. *Id*. The government argued that Otto's claim was barred under the FTCA because her claim accrued immediately after surgery when she learned her "good" parathyroids were also removed and more than two years passed between the surgery and the filing of her claim. *Id*. at 987.

The Fourth Circuit relied on *United States v. Kubrick* in holding that Otto's claim was not barred by the FTCA two year statutory period. *Id*. at 988-89. The court stated,

> Although following the surgery Otto had expressed concerns about the extent of the surgery performed, she was given reasonable and credible explanations for the procedure and for the complications that ensued. She was told to expect some temporary [low calcium levels] and was reassured by her NIH physicians that her remaining parathyroid tissue should begin to function normally within six months.

*Id*. at 989. The Court found Otto's "claim for malpractice could not have accrued until after the second transplant when she became aware of the true nature of her permanent and irreparable injury." *Id*.

Similarly, in this case plaintiff was informed by Dr. Mount that her parathyroids would begin functioning normally and that abnormal calcium levels were only temporary. Plaintiff stated that she was repeatedly provided with explanations for her low calcium levels and told by physicians that her parathyroid functioning would return. Defendant's medical expert stated in his expert report that

"[t]he conclusion that parathyroid damage was permanent and not transient is made at approximately six months after surgery, but certainly no more than one year." Dr. Terris Rule 26 Report (Defendant's Motion to Dismiss, Exhibit F). Plaintiff's medical expert, Dr. Moss did not provide an opinion or know the clinical definition of a time period after which abnormal parathyroid functioning should be considered permanent after a thyroidectomy. Dr. Moss Depo., at 74 (Defendant's Motion to Dismiss, Exhibit E). Regardless of when endocrinologist literature might establish that abnormal parathyroid functioning should be considered permanent and indicative of potential parathyroid damage, if plaintiff was not informed and continuously given credible medical explanations for her low calcium levels, she is permitted to put faith in her medical treatment. *See Otto*, 815 F.2d at 988-89.[2]

Upon a review of the pleadings and evidence submitted by the parties, it is clear that plaintiff relied on information provided to her by Dr. Mount and other physicians and remained unaware of

---

[2]The court in *Otto* also held the claim was not barred under the continuous treatment doctrine. The doctrine arguably is applicable in the case at hand, as plaintiff was referred to a private endocrinologist at the direction of Dr. Mount to monitor her low calcium levels after surgery. Similarly, in *Otto*, the patient was referred to a private endocrinologists for calcium level treatments after surgery and the court stated that "the follow-up treatment of local private physicians...rendered at the advice and under the direction fo the NIH physicians, to whom the private doctors consistently and repeatedly deferred" was part of continuous treatment connected with the plaintiff's surgery. *Otto*, 815 F.2d at 988-89. The court further held she had "virtually no alternative but to exhaust all of the possible treatments proposed by NIH," barring accrual of her claim under the FTCA. *Id*. While no evidence was presented here regarding whether Dr. Mount provided advice and direction to plaintiff's private endocrinologist, some courts have held that the same treating physician is not necessary for the continuous care doctrine to apply. *See Id.; Wehrman v. United States*, 830 F.2d 1480 (8th Cir. 1987) (continuous treatment doctrine applicable even though plaintiff treated by various VA doctors since all doctors repeatedly advised him that surgery was not an option); *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1081 (2nd Cir. 1988) (declining to read the requirements of continuous treatment so narrowly as to require the same physician or division of the hospital), *but see Ciccarone v. United States*, 486 F.2d 253, 257 (3rd Cir. 1973) (requiring "the continued existence of the personal, confidential physician-patient relationship"); *Camire v. United States*, 535 F.2d 749, 750 (2nd Cir. 1976) (rejecting continuous treatment doctrine "since the treatment was not continuous by the same doctor (or an associate) or the same hospital for the required period"). Regardless, this court finds that plaintiff was not aware of the permanency of her condition until the March 2003 surgery and the continuous treatment doctrine is not necessary to deny the motion to dismiss.

the full extent and permanency of her injury until 2003. Even if plaintiff was aware she was injured in some respect following the surgery and knew her parathyroids were not yet fully functional, she continued to be assured it was a temporary condition and should not be charged with knowledge of an "injury" for purposes of her claim accruing under the FTCA. *See Coffie*, 43 Fed. Appx. at 812. After learning the full extent and permanency of her injury and determining that her parathyroids had been permanently rendered dysfunctional by Dr. Mount, she filed her administrative claim within the statutory two year period. Therefore, defendant's motion to dismiss for lack of subject matter jurisdiction must be dismissed.

  An order consistent with this opinion will be entered this date.

September 30, 2011

**Charles R. Simpson III, Judge**
**United States District Court**